**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ELIZABETH HERRERA, Derivatively on Behalf of VASCO DATA SECURITY INTERNATIONAL, INC. | : : : : : | Civil Action No. |
| Plaintiff, | : : |
| v. | : : : |
| T. KENDALL HUNT, CLIFFORD K. BOWN, JAN VALCKE, MICHAEL P. CULLINANE, JOHN N. FOX, JR., JEAN K. HOLLEY, and MATTHEW MOOG | : : : : : : |
| Defendants, | : : |
| and | : | **JURY TRIAL DEMANDED** |
| VASCO DATA SECURITY INTERNATIONAL, INC., | : : : |
| Nominal Defendant. | : : |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

1.     Plaintiff Elizabeth Herrera ("Plaintiff"), by and through her undersigned attorneys, hereby submits this Verified Shareholder Derivative Complaint (the "Complaint") for the benefit of nominal defendant VASCO Data Security International, Inc. ("VASCO" or the "Company") against certain current and/or former members of its Board of Directors (the "Board") and executive officers seeking to remedy defendants' breaches of fiduciary duties and unjust enrichment from February 18, 2014 to the present (the "Relevant Period").

**NATURE OF THE ACTION**

2.     According to its public filings, VASCO is an IT security company that, through its operating subsidiaries, designs, develops, markets, and supports hardware and software security systems that manage and secure access to information assets worldwide. VASCO's

- 1 -

computer security subsidiaries include VASCO Data Security, Inc. ("VASCO Data Security - U.S."), headquartered in Oakbrook Terrace, Illinois, and VASCO Data Security NV/SA ("VASCO Data Security - Belgium"), headquartered in Brussels, Belgium. The Company sells its security solutions through its direct sales force, distributors, resellers, and systems integrators. VASCO was founded in 1991 and is headquartered in Oakbrook Terrace, Illinois.

3.    On July 21, 2015, after the market closed for trading, Defendants caused the Company to file a Form 8-K with the U.S. Securities and Exchange Commission ("SEC") announcing "that certain of its products, which were sold by a VASCO European subsidiary to a third-party distributor, may have been resold by the distributor to parties in Iran, potentially including parties" subject to U.S. economic sanctions. Additionally, the Form 8-K stated, in relevant part:

> The Audit Committee of the Company's Board of Directors has initiated an internal investigation to review this matter with the assistance of outside counsel. VASCO has stopped all shipments to such distributor pending the outcome of the investigation which will include a review and recommendations to improve, if necessary, VASCO's applicable compliance procedures regarding these matters.
>
> As a precautionary matter, concurrent initial notices of voluntary disclosure were submitted on June 25, 2015 with each of the U.S. Department of the Treasury, Office of Foreign Assets Control ("OFAC"), and the U.S. Department of Commerce, Bureau of Industry and Security ("BIS"). The Company will file a further report with each of OFAC and BIS after completing its review and fully intends to cooperate with both agencies. Total VASCO revenues from all sales to the particular distributor during the period relevant to review by OFAC and BIS (June 1, 2010 through June 25, 2015) were approximately $3.1 million

4.    As a result of this news, shares of VASCO fell $0.86 per share, or over 3.22%, on unusually heavy volume, to close at $25.83 per share on July 22, 2015.

5.    Throughout the Relevant Period, defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operation, and prospects. Specifically, defendants made false and/or misleading statements

and/or failed to disclose that: (1) VASCO's products were illegally sold to parties in the Islamic Republic of Iran ("Iran"), in violation of federal laws prohibiting such sales; (2) the Company lacked adequate internal controls; and (3) as a result of the foregoing, VASCO's public statements were materially false and misleading at all relevant times.

6. Accordingly, as a result of defendants' breaches, the Company has been damaged.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367(a). This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

8. Venue is proper in this District because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this District. One or more of the defendants either resides in or maintains executive offices in this District, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this District

## THE PARTIES

9. Plaintiff is a current shareholder of VASCO and has continuously held VASCO stock since September 2012. Plaintiff is a citizen of Maryland.

10. Nominal defendant VASCO is a Delaware corporation headquartered in Oakbrook Terrace, Illinois. According to its public filings, VASCO, together with its subsidiaries, designs, develops, markets, and supports hardware and software security systems

that manage and secure access to information assets worldwide.

11.     Defendant T. Kendall Hunt ("Hunt"), the founder of VASCO, has served as the Company's Chairman since its incorporation in 1997, and as its Chief Executive Officer ("CEO") since November 2002.  Previously, defendant Hunt served as the Company's CEO from 1997 to 1999.  Upon information and belief, defendant Hunt is a citizen of Illinois.

12.     Defendant Clifford K. Bown ("Bown") served as the Company's Executive Vice President and Chief Financial Officer ("CFO") from 2002 until October 5, 2015.   Upon information and belief, defendant Bown is a citizen of Illinois.

13.     Defendant Jan Valcke ("Valcke") has served as the Company's President and Chief Operating Officer ("COO") since 2002.  Defendant Valcke has been an officer of the Company since 1996.  Upon information and belief, defendant Valcke is a citizen of Belgium.

14.     Defendant Michael P. Cullinane ("Cullinane") has served as a director of the Company since April 1998.  In addition, defendant Cullinane served as the Chairman of the Board's Audit Committee (the "Audit Committee"), and as a member of the Board's Compensation Committee (the "Compensation Committee") and the Board's Corporate Governance and Nominating Committee (the "Corporate Governance Committee") during the Relevant Period.  Upon information and belief, defendant Cullinane is a citizen of Florida and Illinois.

15.     Defendant John N. Fox, Jr. ("Fox") has served as a director of the Company since April 2005.  In addition, defendant Fox served as a member of the Audit Committee and the Corporate Governance Committee and as a Chairman of the Compensation Committee during the Relevant Period.  Upon information and belief, defendant Fox is a citizen of California and Illinois.

16. Defendant Jean K. Holley ("Holley") has served as a director of the Company since August 2006. In addition, defendant Holley served as a member of the Audit Committee and the Compensation Committee and as a Chairman of the Corporate Governance Committee during the Relevant Period. Upon information and belief, defendant Holley is a citizen of Georgia.

17. Defendant Matthew Moog ("Moog") has served as a director of the Company since December 2012. In addition, defendant Moog served as a member of the Audit Committee, the Compensation Committee and the Chairman of the Corporate Governance Committee during the Relevant Period. Upon information and belief, defendant Moog is a citizen of Illinois.

18. Collectively, defendants Hunt, Bown, Valcke, Cullinane, Fox, Holley, and Moog shall be referred to herein as the "Defendants."

19. Collectively, defendants Cullinane, Fox, Holley, and Moog shall be referred to as the "Audit Committee Defendants."

**DEFENDANTS' DUTIES**

20. By reason of their positions as officers, directors, and/or fiduciaries of VASCO and because of their ability to control the business and corporate affairs of VASCO, Defendants owed VASCO and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage VASCO in a fair, just, honest, and equitable manner. Defendants were and are required to act in furtherance of the best interests of VASCO and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and officer of the Company owes to VASCO and its shareholders the fiduciary duty to exercise good faith and diligence in the

administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

21.     Defendants, because of their positions of control and authority as directors and/or officers of VASCO, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.   Because of their advisory, executive, managerial, and directorial positions with VASCO, each of the Defendants had knowledge of material non-public information regarding the Company.

22.     To discharge their duties, the officers and directors of VASCO were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.   By virtue of such duties, the officers and directors of VASCO were required to, among other things:

    a.  Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

    b.  Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority;

    c.  Exercise good faith to ensure that the Company's financial statements were prepared in accordance with GAAP; and

    d.  When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

23.     Pursuant to the Audit Committee's Charter, the Audit Committee is to oversee the accounting and financial reporting processes of the Company and its subsidiaries and the audits of the financial statements of the Company.   According to the Audit Committee Charter, the

members of the Audit Committee are specifically required, *inter alia*, to:

    a.  Oversee the integrity of the Company's financial statements;

    b.  Discussions with the Company's registered public accounting firm to include any potentially illegal acts or instances of fraud noted during the review or audit;

    c.  Review the type and presentation of information to be included in the Company's earnings press releases, as well as financial information and earnings guidance provided by the Company to analysts and rating agencies;

    d.  Review the adequacy and effectiveness of the Company's accounting and internal control policies and procedures on a regular basis;

    e.  Be directly responsible for the appointment, compensation, retention and oversight of the work of any registered public accounting firm engaged for the purpose of preparing or issuing an audit report; and

    f.  Review the performance of the Company's registered public accounting firm.

## SUBSTANTIVE ALLEGATIONS

**A.**    **Company Background**

24. According to its public filings, VASCO is an IT security company that, through its operating subsidiaries, designs, develops, markets, and supports hardware and software security systems that manage and secure access to information assets worldwide. VASCO's computer security subsidiaries include VASCO Data Security - U.S., headquartered in Oakbrook Terrace, Illinois, and VASCO Data Security - Belgium, headquartered in Brussels, Belgium. The Company sells its security solutions through its direct sales force, distributors, resellers, and systems integrators. VASCO purports to be the world leader in providing Two-factor authentication and digital signature solutions to financial institutions. More than half of the Top 100 global banks rely on VASCO solutions to enhance security, protect mobile applications, and meet regulatory requirements. VASCO also secures access to data and applications in the cloud, and provides tools for application developers to easily integrate security functions into their web-based and mobile applications. VASCO enables more than 10,000 customers in 100 countries to

secure access, manage identities, verify transactions, and protect assets across financial, enterprise, E-commerce, government and healthcare markets. VASCO was founded in 1991 and is headquartered in Oakbrook Terrace, Illinois.

**B.      Defendants' False and Misleading Statements**

25.      On February 18, 2014, Defendants caused the Company to issue a press release and file a Form 8-K with the SEC, announcing its financial and operating results for the fourth quarter and full year ended December 31, 2013.  For the fourth quarter, the press release reported net income of $3.23 million, or $0.08 per share on a diluted basis, on revenue of $43.27 million, compared to net income of $2.02 million, or $0.05 per share on a diluted basis, on revenue of $38.84 million for same period in the prior year.  For the full year, the press release reported net income of $11.5 million, or $0.28 per diluted share, on revenue of $155.05 million, compared to net income of $15.60 million, or $0.40 per diluted share, on revenue of $154.03 million for the prior year.

26.      On March 12, 2014, Defendants caused the Company to file a Form 10-K ("2014 10-K") with the SEC which was signed by all Defendants – Hunt, Bown, Valcke, Cullinane, Fox, Holley, and Moog – and reiterated the Company's previously announced quarterly and fiscal year-end financial results and financial position.  In addition, the 2014 10-K contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX Certifications") by defendants Hunt and Bown, stating that the financial information contained in the 2014 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting. The SOX Certifications signed during the Relevant Period (including those in the 2014 10-K) were substantially similar and set forth:

I, [T. Kendall Hunt/Clifford K. Bown], certify that:

1.    I have reviewed this annual report on Form 10-K of VASCO Data Security International, Inc.;

2.    Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3.    Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4.    The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

> (a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared; and

> (b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles; and

> (c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures as of the end of the period covered by the report based on such evaluation; and

> (d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting.

5.    The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent

functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

\* \* \*

In connection with the filing with the Securities and Exchange Commission of the Annual Report of VASCO Data Security International, Inc. (the company) on Form 10-K for the period ending December 31, 2013 (the Report), I, T. Kendall Hunt, Chief Executive Officer and Chairman of the Board of Directors of the company, certify, pursuant to 18 U.S.C. Section 1350, as adopted pursuant to Section 906 of the Sarbanes-Oxley Act of 2002, that to the best of my knowledge:

i.  The Report fully complies with the requirements of section 13(a) or 15(d) of the Securities Exchange Act of 1934; and

ii.  The information contained in the Report fairly presents, in all material respects, the financial condition and results of operations of the company.

27.     On April 24, 2014, Defendants caused the Company to issue a press release and file a Form 8-K with the SEC, announcing its financial and operating results for the first quarter ending March 31, 2014.  The 8-K reported net income of $3.51 million, or $0.09 per diluted share, on revenue of $38.82 million, compared to net income of $2.79 million, or $0.07 per diluted share, on revenue of $35.37 million, for the same period in the prior year.

28.     On May 6, 2014, Defendants caused the Company to file a Form 10-Q ("10-Q 1Q14") with the SEC, which was signed by defendants Hunt and Bown, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the 10-Q 1Q14 contained SOX Certifications signed by defendants Hunt and Bown, which were substantially similar to those set forth above.

29.     On July 24, 2014, Defendants caused the Company to issue a press release and

file a Form 8-K with the SEC, announcing its financial and operating results for the second quarter ending June 30, 2014, reporting net income of $6.89 million, or $0.17 per diluted share, on revenue of $47.65 million, compared to net income of $1.81 million, or $0.05 per diluted share, on revenue of $37.26 million, for the same period in the prior year.

30.     On August 5, 2014, Defendants caused the Company to file a Form 10-Q ("10-Q 2Q14") with the SEC, which was signed by defendants Hunt and Bown, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the 10-Q 2Q14 contained SOX Certifications signed by defendants Hunt and Bown, which were substantially similar to those set forth above.

31.     On October 28, 2014, Defendants caused the Company issue a press release and file a Form 8-K with the SEC, announcing its financial and operating results for the third quarter ending September 30, 2014, reporting net income of $11.16 million, or $0.28 per diluted share, on revenue of $52.63 million, compared to net income of $3.32 million, or $0.08 per diluted share, on revenue of $39.16 million, for the same period in the prior year.

32.     On November 4, 2014, Defendants caused the Company to file a Form 10-Q ("10-Q 3Q14") with the SEC, which was signed by defendants Hunt and Bown, and reiterated the Company's previously announced quarterly financial results and financial position.  In addition, the 10-Q 3Q14 contained SOX Certifications signed by defendants Hunt and Bown, which were substantially similar to those set forth above.

33.     On February 17, 2015, Defendants caused the Company to issue a press release and file a Form 8-K with the SEC, announcing its financial and operating results for the fourth quarter and full year ended December 31, 2014.  For the fourth quarter, the press release announced net income of $11.92 million, or $0.30 per share on a diluted basis, on revenue of

- 11 -

$62.43 million, compared to net income of $3.23 million, or $0.08 per share on a diluted basis, on revenue of $43.27 million for same period in the prior year. For the full year, the press release reported net income of $33.48 million, or $0.85 per diluted share, on revenue of $201.54 million, compared to net income of $11.5 million, or $0.28 per diluted share, on revenue of $155.05 million for the prior year.

34.     On March 13, 2015, Defendants caused the Company to file a Form 10-K ("2015 10-K") with the SEC, which was signed by defendants Hunt, Valcke, Bown, Cullinane, Holley, Fox, and Moog and reiterated the Company's previously announced quarterly and fiscal year-end financial results and financial position. In addition, the 2015 10-K contained SOX Certifications signed by defendants Hunt and Bown, which were substantially similar to those set forth above.

35.     On April 28, 2015, the Company issued a press release and filed a Form 8-K with the SEC, announcing its financial and operating results for the first quarter ending March 31, 2015, reporting net income of $13.63 million, or $0.34 per diluted share, on revenue of $65.14 million, compared to net income of $3.51 million, or $0.09 per diluted share, on revenue of $38.82 million, for the same period in the prior year.

36.     On May 5, 2015, Defendants caused the Company to file a Form 10-Q ("10-Q 1Q15") with the SEC, which was signed by defendants Hunt and Bown, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q 1Q15 contained SOX Certifications signed by defendants Hunt and Bown, which were substantially similar to those set forth above.

37.     Throughout the Relevant Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business and operation. The statements referenced above were materially false and/or misleading because

- 12 -

they misrepresented and failed to disclose the following adverse facts, which were known to defendants or recklessly disregarded by them, including that: (1) VASCO's products were illegally sold to parties in Iran in violation of federal laws prohibiting such sales; (2) the Company lacked adequate internal controls; and (3) as a result of the foregoing, VASCO's public statements were materially false and misleading at all relevant times.

**C.** **The Truth Begins to Emerge**

38.     On July 21, 2015, after the market closed for trading, Defendants caused the Company to file a Form 8-K with the SEC announcing "that certain of its products which were sold by a VASCO European subsidiary to a third-party distributor may have been resold by the distributor to parties in Iran, potentially including parties" subject to U.S. economic sanctions. The Form 8-K stated, in relevant part:

> The Audit Committee of the Company's Board of Directors has initiated an internal investigation to review this matter with the assistance of outside counsel. VASCO has stopped all shipments to such distributor pending the outcome of the investigation which will include a review and recommendations to improve, if necessary, VASCO's applicable compliance procedures regarding these matters.

> As a precautionary matter, concurrent initial notices of voluntary disclosure were submitted on June 25, 2015 with each of the U.S. Department of the Treasury, Office of Foreign Assets Control ("OFAC"), and the U.S. Department of Commerce, Bureau of Industry and Security ("BIS"). The Company will file a further report with each of OFAC and BIS after completing its review and fully intends to cooperate with both agencies. Total VASCO revenues from all sales to the particular distributor during the period relevant to review by OFAC and BIS (June 1, 2010 through June 25, 2015) were approximately $3.1 million.

39.     As a result of this news, shares of VASCO fell $0.86, or over 3.22%, to close at $25.83 per share on July 22, 2015.

40.     Accordingly, as a result of defendants' breaches, the Company has been damaged.

**DERIVATIVE AND DEMAND ALLEGATIONS**

41.     Plaintiff brings this action derivatively in the right and for the benefit of VASCO

to redress the breaches of fiduciary duty and other violations of law by Defendants.

42.     Plaintiff will adequately and fairly represent the interests of VASCO and its shareholders in enforcing and prosecuting its rights.

43.     The Board currently consists of the following five (5) individuals: defendants Hunt, Cullinane, Fox, Holley, and Moog.  Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful and useless act, for the following reasons:

a.      During the Relevant Period, defendants Cullinane, Fox, Holley, and Moog (a majority of the Board) served as members of the Audit Committee. Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee are responsible for, *inter alia*, overseeing the accounting and financial reporting processes of the Company and its subsidiaries and the audits of the financial statements of the Company.  Specifically, the members of the Audit Committee are required to: (i) review the type and presentation of information to be included in the Company's earnings press releases, as well as financial information and earnings guidance provided by the Company to analysts and rating agencies, (ii) review the adequacy and effectiveness of the Company's accounting and internal control policies and procedures on a regular basis, and (iii) review the adequacy of the Company's independent auditor.  Defendants Cullinane, Fox, Holley, and Moog breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, *inter alia*, allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise, failed to ensure that adequate internal controls were in place regarding the serious accounting issues and deficiencies described above.  Therefore, defendants Cullinane, Fox, Holley, and Moog face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile;

b.      The principal professional occupation of defendant Hunt is his employment with VASCO as its CEO, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits.  In addition, according to the Company's Proxy Statement filed with the SEC on April 23, 2015 (the "2015 Proxy"), Defendants have admitted that defendant Hunt is not independent.  Thus, defendant Hunt lacks independence from demonstrably interested directors, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action;

c.   All of the Board members are interested because they face a substantial likelihood of liability in connection with the Audit Committee's purported "internal investigation" into illegal sales of VASCO products to parties in Iran in violation of federal laws prohibiting such sales. Indeed, the Audit Committee – consisting of defendants Cullinane, Fox, Holley, and Moog – cannot possibly perform an "independent" investigation, because, in light of the Company's illegal conduct and material internal controls deficiencies, which led to such conduct, the Audit Committee members have been charged with investigating their own conduct. Thus, demand is excused; and

d.   Defendants Hunt, Cullinane, Fox, Holley, and Moog (*i.e.* the entire Board) each signed the false and misleading 2014 10-K and the false and misleading 2015 10-K. The 2014 10-K and the 2015 10-K were false and misleading because (among other things) they failed to disclose the actions of the Company's subsidiaries and made false and misleading statements regarding the Company's internal controls. Therefore, Hunt, Cullinane, Fox, Holley, and Moog each face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

**COUNT I**
**AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTY FOR DISSEMINATING FALSE AND MISLEADING INFORMATION**

44.   Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

45.   As alleged in detail herein, each of the Defendants (and particularly the Audit Committee Defendants) had a duty to ensure that VASCO disseminated accurate, truthful and complete information to its shareholders.

46.   The Defendants violated their fiduciary duties of care, loyalty, and good faith by causing or allowing the Company to disseminate to VASCO shareholders materially misleading and inaccurate information through, *inter alia*, SEC filings and other public statements and disclosures as detailed herein. These actions could not have been a good faith exercise of prudent business judgment.

47.   As a direct and proximate result of the Defendants' foregoing breaches of

fiduciary duties, the Company has suffered significant damages, as alleged herein.

**COUNT II**
**AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES FOR**
**FAILING TO MAINTAIN INTERNAL CONTROLS**

48.     Plaintiff incorporates by reference all preceding and subsequent paragraphs as if fully set forth herein.

49.     As alleged herein, each of the Defendants (and particularly the Audit Committee Defendants) had a fiduciary duty to, among other things, exercise good faith to ensure that the Company's financial statements were prepared in accordance with GAAP, and, when put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

50.     The Defendants willfully ignored the obvious and pervasive problems with VASCO's internal controls practices and procedures and failed to make a good faith effort to correct the problems or prevent their recurrence.

51.     As a direct and proximate result of the Defendants' foregoing breaches of fiduciary duties, the Company has sustained damages.

**COUNT III**
**AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY DUTIES FOR**
**FAILING TO PROPERLY OVERSEE AND MANAGE THE COMPANY**

52.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

53.     Defendants owed and owe VASCO fiduciary obligations.  By reason of their fiduciary relationships, Defendants specifically owed and owe VASCO the highest obligation of good faith, fair dealing, loyalty and due care.

54.     Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

55.     As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, VASCO has sustained significant damages, not only monetarily, but also to its corporate image and goodwill.

56.     As a result of the misconduct alleged herein, Defendants are liable to the Company.

57.     Plaintiff, on behalf of VASCO, has no adequate remedy at law.

**COUNT IV**
**AGAINST ALL DEFENDANTS FOR UNJUST ENRICHMENT**

58.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

59.     By their wrongful acts and omissions, the Defendants were unjustly enriched at the expense of and to the detriment of VASCO.

60.     Plaintiff, as a shareholder and representative of VASCO, seeks restitution from these Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

**COUNT V**
**AGAINST ALL DEFENDANTS FOR ABUSE OF CONTROL**

61.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

62.     Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence VASCO, for which they are legally responsible.  In particular, Defendants abused their positions of authority by causing or allowing VASCO to misrepresent material facts regarding its financial position and business prospects.

63.     As a direct and proximate result of Defendants' abuse of control, VASCO has

sustained significant damages.

64.     As a result of the misconduct alleged herein, Defendants are liable to the Company.

65.     Plaintiff, on behalf of VASCO, has no adequate remedy at law.

**COUNT VI**
**AGAINST ALL DEFENDANTS FOR GROSS MISMANAGEMENT**

66.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

67.     Defendants had a duty to VASCO and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of VASCO.

68.     Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the businesses of VASCO in a manner consistent with the duties imposed upon them by law.  By committing the misconduct alleged herein, Defendants breached their duties of due care, diligence and candor in the management and administration of VASCO's affairs and in the use and preservation of VASCO's assets.

69.     During the course of the discharge of their duties, Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet the Defendants caused VASCO to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to VASCO, thus breaching their duties to the Company.  As a result, Defendants grossly mismanaged VASCO.

**COUNT VII**
**AGAINST ALL DEFENDANTS FOR WASTE OF CORPORATE ASSETS**

70.     Plaintiff incorporates by reference and realleges each and every allegation

contained above, as though fully set forth herein.

71.     As a result of the misconduct described above, and by failing to properly consider the interests of the Company and its public shareholders, Defendants have caused VASCO to incur (and VASCO may continue to incur) significant legal liability and/or legal costs to defend itself as a result of Defendants' unlawful actions.

72.     As a result of this waste of corporate assets, Defendants are liable to the Company.

73.     Plaintiff, on behalf of VASCO, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against all Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

B.     Directing VASCO to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board

C.     Awarding to VASCO restitution from Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by the Defendants;

D.    Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E.    Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  October 8, 2015

*s/ Matthew T. Hurst*
**HEFFNER HURST**
30 N. LaSalle Street, 12th Floor
Chicago, Illinois 60602
Telephone: (312) 346-3466
Facsimile: (312) 346-2829
mhurst@heffnerhurst.com

*Local Counsel*

**THE WEISER LAW FIRM, P.C.**
ROBERT B. WEISER
BRETT D. STECKER
JAMES M. FICARO
22 Cassatt Avenue
Berwyn, PA 19312
Telephone:  (610) 225-2677
Facsimile:  (610) 408-8062
rw@weiserlawfirm.com
bds@weiserlawfirm.com
jmf@weiserlawfirm.com

*Counsel for Plaintiff*

## VASCO DATA SECURITY INTERNATIONAL, INC. VERIFICATION

I, Elizabeth Herrera, hereby verify that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information, and belief.

Date: _19 Sept. 2015_

_Elizabeth Herrera_
Elizabeth Herrera